## BOSWORTH v. CONTINENTAL ILLINOIS BANK & TRUST CO.
### No. 4887.

Circuit Court of Appeals, Seventh Circuit.
June 5, 1933.

Amos C. Miller, Henry W. Wales, Sidney S. Gorham, and Edward R. Adams, all of Chicago, Ill., for appellant.

Isaac H. Mayer, Carl Meyer, David F. Rosenthal, and Frank D. Mayer, all of Chicago, Ill., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and CARPENTER, District Judge.

EVANS, Circuit Judge.

A single question, which is both close and interesting, is presented by this appeal. It concerns the right of a bank to set off against a deposit the amount of checks by it received shortly before the drawee bank closed its doors.

The facts: Appellant, receiver of the McCartney National Bank of Green Bay, Wisconsin, sued appellee to recover the amount the McCartney National Bank had on deposit when it closed. Appellee refused payment because it had applied the sum on deposit in partial satisfaction of a debt alleged to be due it.

On May 26, 1931, appellee received from its depositors, checks drawn on the McCartney National Bank, aggregating $10,823.14. These checks were forwarded to the McCartney National Bank where they arrived May 27, and the accounts of the drawers of the checks were duly charged with the amounts of the checks by them drawn. On the same day, the McCartney National Bank sent its draft for $10,823.14 on the Federal Reserve Bank of Chicago to appellee. That evening, and before appellee received the draft, the McCartney National Bank closed. The next morning the Federal Reserve Bank refused to pay the draft. Appellee applied the amount of the McCartney National Bank's deposit with it toward the payment of the draft.

When appellee received the one hundred twenty-two checks drawn on the McCartney National Bank on May 26, it credited each depositor's account with the amount of the checks deposited. When the McCartney National Bank's draft was refused payment by the Federal Reserve Bank, appellee promptly charged each depositor's account with the amounts previously credited. Between the date of the deposit and the date of the charge back, no depositor had withdrawn any of the sum thus credited to his account.

The canceled checks were never returned to appellee, but were delivered to the respective makers by the receiver of the McCartney National Bank.

Appellee received the checks and deposited the amount thereof to the depositor's account pursuant to an agreement, portions of which are herewith quoted:

"In receiving and handling items for deposit or collection (including items received in payment of collections) this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. *All items are credited or cashed subject to final payment in cash or solvent credits.* This Bank will not be liable for default or negligence of its correspondents, nor for losses in transit, and no correspondent shall be liable except for its own negligence. It is optional but not obligatory, to request certification in any case. This Bank or its correspondents may, as depositor's agent, send items, directly or indirectly, to any bank or to any drawee, acceptor or payor, and accept draft, check or credit as conditional payment in lieu of cash. It may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited. It may decline to honor or pay checks drawn against conditional credits. This Bank shall have a lien on all items handled by it and on the proceeds thereof for its charges, expenses (including court costs and attorney's fees) and any advances made by it in connection therewith."

All of the checks were forwarded by appellee to the McCartney National Bank for collection and return in Chicago exchange and were either endorsed: "Pay to the order of Continental Illinois Bank and Trust Company" or "Pay to the order of any bank, banker, or trust company."

The determinative question may be stated thus: When the payees named in the checks drawn on the McCartney National Bank endorsed them and appellee credited the depositors' accounts with the amounts thereof, did there arise such a debtor-creditor relationship between the McCartney National Bank and appellee as to permit the latter to apply the former's deposit in extinction of the debt?

Appellant answers this question in the negative, relying upon the agreement between appellee and its depositor which expressly provided that "all items are credited or cashed subject to final payment in cash or solvent credits" and "in receiving and handling items for deposit or collection * * * this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care" and the bank "may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited."

Briefly stated, it is appellant's position that appellee was but an agent of the payees named in the checks, to collect the amounts thereof; that no such title ever passed to appellee as to permit it to set off as against the amounts due on the said checks the amount which the McCartney National Bank had on deposit with appellee.

It seems to us that appellant overemphasizes the written agreement above referred to, the purpose and object of which was to limit the liability of the bank to its depositors, and ignores the legal consequences which resulted from the unqualified endorsement of the checks. While the agreement between appellee and its depositors gave to the bank the right to recharge the depositors' accounts with the amounts of the checks in case the latter were not paid, and placed a limitation or restriction on the bank's liability to its depositors, it would hardly be fair to look solely to this document to determine whether appellee, as against the McCartney National Bank, was a creditor.

The court can not, and should not, overlook the acts of the parties accompanying the transaction, nor can we ignore the unqualified endorsements which the payees of the checks wrote upon the back of them. These endorsements, unexplained, gave to appellee the right to maintain an action against the McCartney National Bank upon those checks, if they were not paid when presented.

Such a right as against the McCartney National Bank would not defeat nor destroy appellee's right to look also to the endorsers of the checks. Appellee had two remedies if the checks were unpaid. It could sue the McCartney National Bank, and it could pursue the endorser who endorsed the check.

634

The existence of the one remedy was not inconsistent with the other. Appellee's liability to its endorser might be measured by that of an agent to its principal and yet such a transfer of interest occur through payees' unqualified endorsement and by the transfer of money by the bank to the accounts of the payees as to make the bank a creditor with right to sue the drawee bank upon nonpayment of the checks.

Several very recent decisions dealing with somewhat similar fact situations have been called to our attention, and they are favorable to appellee. A. M. Anderson, Receiver, v. Taver Bayly, 63 F.(2d) 592, decided March 4, 1933 (C. C. A. 5); Harold Nomland, Receiver, v. First National Bank of Kansas City, 64 F.(2d) 399, filed April 3, 1933 (C. C. A. 8).

Counsel for appellant has pointed out the differences in the agreements (banks' agreements with depositors), and thereby seeks to distinguish the holdings. We must admit, of course, that the terms of the agreements between depositors and banks are not identical in the cited cases with the agreement in this case. But the reasoning which led to the conclusions reached makes such differences nonessential.

Moreover in the instant case, appellee's claim to be the creditor of the McCartney National Bank at the time it applied the latter's deposit to a satisfaction of the claim was greatly strengthened and fortified by the action of the McCartney National Bank upon the receipt of the checks from appellee. The McCartney National Bank, immediately upon receiving the checks from appellee, charged each of its customers with the amount of the check by him drawn. It then executed its draft on the Federal Reserve Bank of Chicago, payable to appellee, and mailed it to appellee. Thus it will be seen that when appellee applied the deposit of the McCartney National Bank to the extinguishment of its debts, its position as a *creditor* was no longer dependent solely on the transfer of checks, but its creditor position rested upon (a) the endorsement of checks to appellee, (b) the crediting of appellee's depositors' accounts with the amount thereof, (c) the issuance of a draft by the McCartney National Bank to appellee, and (d) the charging of the account of the depositors of the McCartney National Bank with the amount of the checks for which that bank sent appellee its draft.

The judgment is

Affirmed.